UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| RENÉ FLORES, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 1:23-cv-12604-JEK |
| FIRST CAMBRIDGE REALTY CORPORATION, | ) ) ) ) ) | |
| Defendant. | ) ) | |

### MEMORANDUM AND ORDER ON PLAINTIFF'S
### PARTIAL MOTION FOR JUDGMENT ON THE PLEADINGS

**KOBICK, J.**

The plaintiff, René Flores, brings this action alleging that the defendant, First Cambridge Realty Corporation, a rental management agency, unlawfully discriminated against him when he sought to rent an apartment in December 2022. He asserts claims under the Fair Housing Act, 42 U.S.C. § 3604, and M.G.L. c. 151B, §§ 4(6) and (7B), for discrimination on the basis of race and color, as well as a claim for intentional infliction of emotional distress. Pending before the Court is Mr. Flores's partial motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Because, at this stage in the proceedings, the Court may accept as true only those factual allegations admitted in First Cambridge's answer, Mr. Flores is not presently entitled to judgment on the pleadings and his motion will be denied.

### BACKGROUND

The allegations in the complaint are as follows. Since September 1, 2021, Mr. Flores, who identifies as Hispanic, has lived with his roommate at an apartment in Newton, Massachusetts. ECF 1, ¶¶ 13-14. On December 6, 2022, in response to a request from his roommate to pay rent,

Mr. Flores called and spoke with First Cambridge's administrative assistant. *Id.* ¶ 14. Upon learning that Mr. Flores was Hispanic, the administrative assistant allegedly said, "[i]f you are Hispanic, you should not be in this building or living in Newton." *Id.* ¶¶ 15-17. And, once Mr. Flores affirmed that he would like to rent an apartment from First Cambridge, she further stated that "no one from the Hispanic community is allowed to live in Newton." *Id.* ¶ 18.

The following day, Mr. Flores received a letter with a questionnaire from First Cambridge that asked, among other things, if Mr. Flores was an American citizen. *Id.* ¶ 19. Mr. Flores called First Cambridge to ask why the company needed to know his citizenship in determining whether to rent him an apartment. *Id.* ¶ 20. The same administrative assistant allegedly said to him that "this is how this company discourages Hispanic [individuals] from applying for rental applications," and that First Cambridge would evict Mr. Flores if he did not prove his American citizenship. *Id.* ¶¶ 20-22.

Mr. Flores filed a complaint with the Massachusetts Commission Against Discrimination ("MCAD") alleging violations of the Fair Housing Act and M.G.L. c. 151B, § 4(6). In July 2023, after an investigation, MCAD found probable cause to believe that First Cambridge discriminated against Mr. Flores on the basis of race and color. ECF 1, ¶ 25; ECF 15-1, Decision, at 5-6. Under MCAD's regulations, a probable cause determination is made "when the Investigating Commissioner concludes after investigation of the complaint that there is sufficient evidence upon which a fact-finder could form a reasonable belief that it is more probable than not that [the] respondent committed an unlawful practice." 804 Code Mass. Regs. 1.08(1)(f)(1). Upon MCAD's determination of probable cause, Mr. Flores and First Cambridge received notice of their right to choose to proceed to a hearing before the Commission or to proceed with resolution of the

complaint by judicial determination. *See* M.G.L. c. 151B, § 5; ECF 15-1.[1]

Mr. Flores filed his complaint in this Court in October 2023. First Cambridge's answer admitted that Mr. Flores spoke with First Cambridge's administrative assistant on December 6 and 7, 2022, that First Cambridge gave Mr. Flores a questionnaire with questions about his citizenship, and that Mr. Flores asked the administrative assistant why he needed to disclose his citizenship in connection with an apartment rental application. ECF 7, ¶¶ 14, 20, 24, 27. First Cambridge also admitted that Mr. Flores filed the MCAD complaint and that MCAD issued a probable cause determination in his favor. *Id.* ¶¶ 12, 25. But it denied that the administrative assistant made the discriminatory statements described in Mr. Flores's complaint. *Id.* ¶¶ 15-18, 21-22. And while First Cambridge's answer admitted that a witness had provided MCAD an affidavit confirming those statements had been made, it denied the substance of that affidavit. *Id.* ¶ 26. Mr. Flores thereafter filed a partial motion for judgment on the pleadings, seeking judgment in his favor as to liability.

## STANDARD OF REVIEW

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings under Rule 12(c) "is treated much like a Rule 12(b)(6) motion to dismiss." *Pérez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008) (citing *Curran v. Cousins*, 509 F.3d 36, 43-44 (1st Cir. 2007)). Accordingly, "'the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom.'" *Id.* (quoting *R.G. Fin. Corp. v. Vergara-Nuñez*, 446 F.3d 178, 182 (1st Cir. 2006)). Precisely because a Rule 12(c) motion seeks "an extremely early assessment of the merits of the case, the trial court must accept

---

[1] On December 8, 2022, Mr. Flores also filed a separate complaint with the Massachusetts Attorney General's Office raising similar allegations. *See* ECF 15-1, Decision, at 4.

3

all of the nonmovant's well-pleaded factual averments as true." *Rivera-Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir. 1988).

"In deciding a motion for judgment on the pleadings filed by a plaintiff, the court considers only [the] allegations of fact that are admitted or not controverted in the pleadings." *Saade v. Sec. Connection Inc.*, No. 17-cv-10168-NMG, 2019 WL 2477654, at *3 (D. Mass. June 13, 2019). Thus, when a defendant denies allegations made in a complaint, those allegations present a genuine issue of material fact, and the court must draw inferences in the defendant's favor. *See id.*; *Sarvis v. Polyvore, Inc.*, No. 12-cv-12233-LTS, 2015 WL 5934759, at *3 (D. Mass. Aug. 24, 2015), *report and recommendation adopted by*, 2015 WL 6182226, at *1 (D. Mass. Sept. 14, 2015).

## DISCUSSION

Mr. Flores's motion contends that he is entitled to judgment on the pleadings on his claims under the Fair Housing Act and M.G.L. c. 151B, § 4.[2] Both statutes prohibit discrimination in housing based on race or color. *See* 42 U.S.C. § 3604(a)-(e); M.G.L. c. 151B, §§ 4(6) and (7B). And under both statutes, a plaintiff may pursue either a disparate treatment or a disparate impact theory of liability. *See Texas Dep't of Hous. & Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 545-46 (2015); *Langlois v. Abington Hous. Auth.*, 207 F.3d 43, 49-50 (1st Cir. 2000); *Burbank Apartments Tenant Ass'n v. Kargman*, 474 Mass. 107, 121-24 (2016).

The complaint asserts plausible claims of disparate treatment under the Fair Housing Act and chapter 151B. "A plaintiff can make a disparate treatment claim by presenting evidence that a discriminatory purpose 'more likely than not' motivated the conduct." *S. Middlesex Opportunity Council, Inc. v. Town of Framingham*, 752 F. Supp. 2d 85, 96 (D. Mass. 2010) (quoting *Budnick v.*

---

[2] The motion does not seek judgment on the pleadings on the claim for intentional infliction of emotional distress.

*Town of Carefree*, 518 F.3d 1109, 1114 (9th Cir. 2008)). Discriminatory purpose can be shown "by either direct or indirect evidence." *Pina v. Town of Plympton*, 529 F. Supp. 2d 151, 155 (D. Mass. 2007) (quoting *Caron v. City of Pawtucket*, 307 F. Supp. 2d 364, 368 (D.R.I. 2004)) (internal quotation marks omitted). The statements of First Cambridge's administrative assistant, if proven, would constitute evidence of discriminatory purpose. But at this stage in the proceedings, the Court must draw inferences in favor of the non-moving party, and First Cambridge's answer denies that its administrative assistant made the discriminatory statements. *See Rivera-Gomez*, 843 F.2d at 635; *Saade*, 2019 WL 2477654, at *3. During discovery, the parties will have the opportunity to develop evidence on the substance of the phone calls between Mr. Flores and the administrative assistant. But under the Rule 12(c) standard, Mr. Flores is not entitled to judgment in his favor based on contested allegations concerning the administrative assistant's statements.

Nor does First Cambridge's admitted use of a questionnaire that inquired into Mr. Flores's citizenship, standing alone, establish liability under a disparate treatment or disparate impact theory. In general, "a plaintiff bringing a disparate-impact claim challenges practices that have a 'disproportionately adverse effect on minorities' and are otherwise unjustified by a legitimate rationale." *Inclusive Communities*, 576 U.S. at 524 (quoting *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009)). The Supreme Court explained in *Inclusive Communities* that disparate impact claims under the Fair Housing Act are analyzed under a three-step, burden shifting framework. *Id.* at 540-43. Once the plaintiff makes a prima facie case of disparate impact on a protected class, the defendant has the burden of persuasion to "state and explain the valid interest served by their policies." *Id.* at 541. To establish liability, the plaintiff then shoulders the burden to prove that the defendant's asserted interest "could be served by another practice that has a less discriminatory effect." *Id.* at 527 (quoting 24 C.F.R. § 100.500(c)(3)) (internal quotation marks omitted). Citing

*Inclusive Communities*, the Supreme Judicial Court has likewise embraced this burden shifting test in analyzing similar disparate impact claims under M.G.L. c. 151B, § 4, including the "robust causality requirement" that must be met at the first step. *Burbank Apartments Tenant Ass'n*, 474 Mass. at 126-31 (quoting *Inclusive Communities*, 576 U.S. at 542) (internal quotation marks omitted).

The existence of a policy requiring applicants for apartment rentals to disclose their citizenship can support a prima facie case of disparate impact discrimination against people of Hispanic descent under the Fair Housing Act and chapter 151B. *See Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 428-29 (4th Cir. 2018) (plaintiffs who challenged policy requiring occupants of a manufactured housing community to document legal status made out prima facie case of disproportionate impact on the Latino population in violation of the Fair Housing Act). But at this "extremely early" phase of the case, *Rivera-Gomez*, 843 F.2d at 635, First Cambridge has not had the opportunity to offer any explanation for, or identify a valid, non-discriminatory interest served by, its questionnaire, nor has Mr. Flores been held to his ultimate burden of proof. The burden-shifting framework that governs claims under the Fair Housing Act and chapter 151B, properly applied, forecloses Mr. Flores's request for judgment on the pleadings in his favor.

## CONCLUSION

Accordingly, Mr. Flores's partial motion for judgment on the pleadings is DENIED. IT IS SO ORDERED.

/s/ Julia E. Kobick<br>
United States District Judge

Dated: February 2, 2024